Arthur KRAUSE, Administrator of the Estate of Allison Krause, Deceased,

v.

James A. RHODES, et al.

Sarah SCHEUER, Administratrix of the Estate of Sandra Lee Scheuer, Deceased,

v.

James A. RHODES, et al.

Elaine Miller HOLSTEIN, Administratrix of the Estate of Jeffrey Glenn Miller, Deceased,

v.

James A. RHODES, et al.

Louis A. SCHROEDER, Administrator of the Estate of William K. Schroeder, Deceased,

v.

James A. RHODES, et al.

Dean KAHLER, Elaine Kahler, Joseph John Lewis and Elizabeth Lewis,

v.

James A. RHODES, et al.

John R. CLEARY and Robert Cleary,

v.

James A. RHODES, et al.

Donald Scott MACKENZIE,

v.

James A. RHODES, et al.

Douglas WRENTMORE,

v.

James A. RHODES, et al.

James D. RUSSELL,

v.

James A. RHODES, et al.

Thomas M. GRACE and Thomas V. Grace,

v.

James A. RHODES, et al.

Alan M. CANFORA,

v.

James A. RHODES, et al.

Robert F. STAMPS and Floyd Stamps,

v.

James A. RHODES, et al.

Nos. C70–544, C71–470, C70–859, C72–439, C70–816, C71–20, C71–471, C71–21 to C71–23, C71–25, C71–24, C71–26 and C73–643.

United States District Court, N. D. Ohio.

Feb. 28, 1979.

Order of Judgment March 12, 1979.

Affirmed, 6 Cir., 671 F.2d 212.

Sanford Jay Rosen, Rosen, Remcho & Henderson, San Francisco, Cal., Rees Davis, Mansfield, Ohio, Nelson Karl, Cleveland, Ohio, David Engdahl, Engdahl, Renzo & Reed, P.C., Denver, Colo., Richard Larsen, Bruce Ennis, American Civil Liberties Union, New York City, Steven Keller, ACLU of Ohio, Columbus, Ohio, Ellen S. Goldblatt, Landels, Ripley & Diamond, San Francisco, Cal., for plaintiffs.

Chester E. Finn, Estabrook, Finn & McKee, Dayton, Ohio, Stephen T. Parisi, Burke, Haber & Berick, Cleveland, Ohio, Charles E. Shanklin, George, Greek, King, McMahon & McConnaughey, Michael R. Szolosi, Richard A. Waltz, Asst. Attys. Gen. of Ohio, Columbus, Ohio, Burt Fulton, Gallagher, Sharp, Fulton, Norman & Mollison, Cleveland, Ohio, Charles E. Brown, Crabbe, Brown, Jones, Potts & Schmidt, Columbus, Ohio, Patrick M. McLaughlin, Asst. U. S. Atty., U. S. Dept. of Justice, Cleveland, Ohio, John Plough, Portage County Prosecutor, Ravenna, Ohio, for defendants.

## MEMORANDUM AND ORDER

WILLIAM K. THOMAS, Senior District Judge.

The 13 Kent State civil damage cases are winding down. A Settlement and Dismissal Order was entered by this court on January 4, 1979 listing the terms of the settlement. When those terms are met, final entry in each of the 13 cases, with certain jurisdiction reserved, will be filed.

One of the reserved matters, the subject of several post-settlement hearings, is the motion of plaintiffs to amend and vacate a protective order entered by the Honorable Donald J. Young.[1] The motion was made

---

1. In September, 1979, Judge Young recused himself from the second trial ordered by the

Court of Appeals in *Krause v. Rhodes*, 570 F.2d

on June 27, 1978 and peremptorily denied by this court on October 13, 1978 because of the imminence of the second trial. The motion to vacate the order was renewed on January 8, 1979. The protective order of June 24, 1976 directs in part:

> ORDERED that all testimony given, and all materials of every kind and description produced, on discovery in these cases, are, and remain, the sole property of the person testifying, or producing such materials. Except as the same may be offered in any future proceeding in these cases, no use for any other purpose whatsoever shall be made of any of such testimony or materials that has not been made a part of the record of the trial of these causes without the express written permission of the person testifying or producing such materials;

and it is

> FURTHER ORDERED that none of the parties hereto, or their counsel, who have possession of any transcripts of such testimony, or of any of such materials, shall permit the same to be copied or used by any person whatsoever without the express written permission of the person testifying or producing such material, except for the purpose of offering or using the same in any future proceedings in these causes.[2]

 It is concluded that the protective order of June 24, 1976 should not be extended beyond the termination of this litigation.

A large quantity of discovery materials obtained by each party now fills storage rooms of counsel for the parties. The existing protective order leaves the future use of these materials to the "person testifying or producing such material," who must first give "express written permission." Giving veto power over use of the material to the witness or the producer of the material impermissibly assumes a property interest in the testimony or discovered material.[3] It is this court's considered judgment that the "person testifying or producing such materials" has no property interest in any of the materials. Hence, such person is not entitled to ban the use of the material by withholding permission. Thus assessed, enforcement of this order should be terminated. It shall end contemporaneously with orders making appropriate disposition of the discovery materials.

Plaintiffs ask that this court vacate the protective order and permit each of the parties to make such disposition of the accumulated discovery materials as each party determines to be suitable, given the "historic" nature of the public event chronicled in these materials. Plaintiffs indicate that they are negotiating with Yale University Library to turn over the materials in the files of counsel for plaintiffs. Counsel for plaintiffs state that they also have considered the possibility of turning over at least some of these materials to the Ohio Historical Society.

563 (6th Cir. 1977). This judge was thereafter appointed to conduct the second trial.

2. This order was appealed to the Sixth Circuit Court of Appeals. On motion of plaintiff-appellants and appellant Peter Davies, the Court of Appeals remanded the matters that make up the appeals in the Court of Appeals, Case Nos. 77–3317 and 3172. This remand returns the jurisdiction over Judge Young's order to this court.

3. *Blair v. United States*, 250 U.S. 273, 281, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919), thus defines the public duty of every citizen to testify in a court proceeding:

> ... [I]t is clearly recognized that the giving of testimony and the attendance upon court or grand jury in order to testify are public duties which every person within the jurisdiction of the Government is bound to perform upon being properly summoned, and for performance of which he is entitled to no further compensation than that which the statutes provide. The personal sacrifice involved is a part of the necessary contribution of the individual to the welfare of the public.

A person compelled to testify as a public duty possesses no private property interest in the testimony he gives, and the testimony becomes part of the public domain. *See United States v. Mitchell*, 386 F.Supp. 639, 642 (D.D.C.1975). (Decided by Supreme Court *sub nom. Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978).

As to discovered materials not yet part of the public domain, a right of privacy but not a property interest, exists for those persons whose names appear in statements.

Defendant Guardsmen, Governor Rhodes, and the Attorney General of Ohio request return of the materials obtained from the Ohio National Guard, Ohio Highway Patrol, and the Ohio Bureau of Criminal Identification and Investigation (BCI). The United States Attorney, whom the court has permitted to intervene in the proceedings, asks that this court order the return of not only the Federal Grand Jury testimony but also FBI interview reports secured by subpoena from the United States Attorney and the Department of Justice.

The prosecutor of Portage County, whom the court has permitted to intervene in these proceedings, requests that the testimony of witnesses who appeared before the Portage County (Ohio) Special Grand Jury[4] and related grand jury materials be returned to the Clerk of Courts of Portage County from whom these materials were obtained by *subpoena duces tecum.* Kent State University through its counsel asks for return of police radio logs, witness statements and photographs subpoenaed from the Kent State University Police Department.

Deposition witnesses Ambler, *et al.* (five in all), through Kent State University counsel, who also represent them individually, on April 24, 1975 were "granted leave to file a motion concerning restrictions on the use of depositions." Their ensuing motion with reference to the depositions led to Judge Young's oral protective order of August 20, 1975 and the journalized protective order of June 24, 1976. The Ambler depo-

nents, here treated as intervenors, oppose the vacation or modification of these orders.

■ Counsel for Kent State University and the Ambler deponents question the standing of plaintiffs to move for a vacation of Judge Young's protective order.[5] The original parties to these cases as well as the intervening parties are each found to face sufficient possible injury in fact that might result from this court's disposition of the discovery materials adverse to a possible interest of each party to provide each of these parties standing in a constitutional sense. *See Worth v. Selden,* 422 U.S. 490, 498–502, 95 S.Ct. 2197, 2204–2207, 45 L.Ed.2d 343 (1975).

The several motions and requests are considered upon a record consisting in part of testimony of Steven Keller, paralegal aide for plaintiffs' counsel, who has been the principal custodian of discovery materials in the possession of the plaintiffs. This court, at its request, personally inspected the materials obtained by plaintiffs from the State of Ohio agencies, including the copies plaintiffs placed in the Kent State University Library Archives. Briefs of counsel and oral arguments have also been considered.

### I.

### A.

■ Plaintiffs raise first a timeliness objection to the requests for return of discovery materials other than the federal grand jury testimony.

4. As detailed in *Hammond v. Brown,* 323 F.Supp. 326 (N.D.Ohio), aff'd 450 F.2d 480 (6th Cir. 1971), a special grand jury was impaneled by the Portage County Common Pleas Court on September 14, 1970 in connection with the events of May 1–4, 1970 in the city of Kent, Ohio and on the campus of Kent State University. After taking the testimony of at least 200 witnesses, the special grand jury returned 30 indictments against 25 persons on October 15, 1970. These indictments included 43 state criminal offenses.

In *Hammond,* this court denied the request of plaintiffs to grant a permanent injunction against the prosecution of the indictments. Further concluding that the "report of the special grand jury was issued illegally and wholly

without lawful authority," and that "the report irreparably injures ... the rights of the indicted plaintiffs," this court ordered Lucy S. DeLeone, Clerk of Courts of Portage County, to obliterate or physically remove and destroy the "Report of the Special Grand Jury."

5. Plaintiffs through their counsel Sanford J. Rosen, assert they have adequate standing both because they are affected by Judge Young's order and because of First Amendment interests in using the discovery materials. Plaintiffs' counsel also represents a Peter Davies, a historian, and author who seeks to use the materials. He previously moved to vacate Judge Young's order, and thereafter, appealed the denial of his motion.

Plaintiffs note that Judge Young issued no order that materials obtained from a government agency should be returned to that agency upon the conclusion of the litigation. Plaintiffs argue that it is now too late for this court to issue such an order; and in any event, this court could only do so by issuing a protective order "for good cause shown" pursuant to Rule 26(C) of the Federal Rules of Civil Procedure.

Plaintiffs, who obtained these discovery materials only because of Judge Young's "open file" discovery policy[6] will not now be heard to fault the lack of accompanying orders by Judge Young to return the materials after the discovery purpose was satisfied. In announcing his adherence "to the concept of 'open file' discovery," Judge Young gave plaintiffs no reason to infer or even to suspect that the parties were thereby given carte blanche to disseminate the discovered materials to the public domain. The truth of the matter is that the question of how the discovery materials should be handled at the close of the cases was not raised by the parties nor mentioned by the court.[7]

Actually, a contrary intent is disclosed by the court's later orders. On April 24, 1975, within two months of his "open file" discovery pronouncement, Judge Young granted KSU counsel leave "to file a motion concerning restrictions on the use of depositions." Subsequently, Kent State Universi-ty counsel made such a motion, which led to a hearing and Judge Young's oral order on August 20, 1975 that "anybody who wanted to use any of the discovery material had to get the permission of the person who was being discovered before he used it." This oral order was more formally journalized on June 24, 1976 in the words earlier quoted. Thus, the record does not support the apparent claim that somehow defendants waived their right to protective orders now by not seeking orders earlier.

### B.

Abjuring the untimeliness argument, we turn to the contention that the several requests for the return of discovery materials in effect ask for protective orders for which Fed.R.Civ.P.'s 26(c) requirement of "good cause" has not been met. In addition, because of the First Amendment free expression claims that plaintiffs assert in the future use of the discovery materials, plaintiffs say that each of the requesting parties must establish constitutionally mandated "good cause" before this court may order return of the requested materials.

In support, plaintiffs cite *In re: Halkin*, 598 F.2d 176 (D.C.Cir., 1979), decided by the D.C. Circuit Court of Appeals on January 19, 1979. In that case, documents were obtained by plaintiffs from the CIA and National Security Council by means of Fed. R.Civ.P. 34.[8] The court concluded that

---

**6.** Defendants did try to obtain a protective order as to the Ohio National Guard and Ohio Highway discovery materials; and they also sought to quash service on the subpoena for the Portage County Grand Jury documents and testimony minutes. But Judge Young, adhering consistently to his "open file" discovery policy, declared in his memorandum and order of February 20, 1975:

> At the outset, it ought to be understood that this court is a firm adherent to the concept of "open file" discovery....
>
> So far as this court is concerned, no matter who gathered and recorded information close to the time of the tragic events involved in this litigation, and no matter what their reason or purpose for gathering it, it must be fully disclosed to all parties to this litigation....

**7.** Moreover, plaintiffs may not use as a hand-hold to advance their untimeliness argument the dissemination of materials due to the number and scattered locales of attorneys who have assisted plaintiffs.

**8.** Halkin and other plaintiffs are principally suing the Central Intelligence Agency and the National Security Agency alleging that these organizations conducted unlawful programs of surveillance of United States citizens who opposed the war in Viet Nam or engaged in other lawful political activities. In response to a motion for production of documents, defendants made available to plaintiffs some 3,000 pages of documents relating to Operation Chaos, the code name for the CIA's surveillance of anti-war activists. Believing that some of these documents contained important information not previously known concerning the operation of Chaos, plaintiffs gave written notice of their

"First Amendment rights attach to materials made available through the discovery process." *In re: Halkin*, at 190. In so concluding, the court both distinguished and took issue with Judge Friendly's opinion in *International Products Corp. v. Koons*, 325 F.2d 403, 407–08 (2nd Cir. 1963).[9] The court explicated what it called "the appropriate constitutional standard governing the issuance of restraining orders under Rule 26(c):" It "must take account of the important public interests in the functioning of the discovery process ... as well as the First Amendment interest in unfettered expression." *In re: Halkin*, at 190.

The *Halkin* majority directed the district court to initially determine "whether a particular protective order in fact restrains expression and the nature of that restraint. An order restraining publication of official court records open to the public, or an order restraining political speech implicates different interests than an order restraining commercial information." At 190–91 (footnotes omitted). In n. 29, pertinent here, the court stated that "[a]rguably there is an absolute privilege to disseminate information contained in public court records. *See Oklahoma Publishing Co. [v. District Court*, 430 U.S. 308, 310–11, 97 S.Ct. 1045, 1046–47,

51 L.Ed.2d 355 (1977)]; *Nebraska Press Ass'n, [v. Stuart*, 427 U.S. 539, 568, 96 S.Ct. 2791, 2807, 49 L.Ed.2d 683 (1976)]." However, it then noted that the existence of the privilege depends on the nature of the discovery material:

Plaintiffs here, however, cannot claim that privilege. The documents were disclosed pursuant to Rule 34 Fed.R.Civ.P. This rule, unlike other methods of discovering information under the Federal Rules, including depositions (Rule 30), interrogatories (Rule 33), and requests for admission under Rule 36, does not provide that responsive material be filed with the court and made part of the public record.

The court further noted that the first amendment interests vary according to "the timeliness of the expression," and that "highly newsworthy information" presents "a different issue than a temporary restraint of materials having 'constant but rarely topical interest.'" At 191–92.

The court then set up three criteria by which a trial court must evaluate any protective order impinging on first amendment interests:

The harm posed by dissemination must be substantial and serious; the restraining

---

intention to release certain documents. Defendants sought and obtained in the district court a protective order against public disclosure. They argued that such disclosure would be "prejudicial to the defendants' right to adjudication of the issues in this civil action in an uncolored and unbiased climate, including a fair trial." Plaintiffs sought a writ of mandamus to prohibit or vacate the trial court's protective order. The appellate court, in a two-to-one decision, did not issue a writ; but it transmitted a copy of its opinion to the district court "to permit further proceedings in the light of the discussion in the opinion." Thus, the district court was told that the protective order should be vacated. Defendants were told that they were free to seek a new restraint on "promulgation of documents by plaintiffs" if a narrowly drawn order "would be constitutional under the principles outlined in this opinion."

9. That holding was as follows:
The portion of the order which seals the deposition of Seldes and limits defendants and others in their use of information obtained therefrom was plainly authorized by Fed. R.Civ.P. [26(c)] and we entertain no doubt as to the constitutionality of a rule allowing a

federal court to forbid the publicizing, in advance of trial, of information obtained by one party from another by use of the court's processes.
After flatly opining that "this passage does not say that parties have no First Amendment rights in discovery materials," Judge Bazelon then declared:
If *Koons* does stand for the proposition that the parties in a civil action waive all First Amendment rights in discovery materials, as the *Rodgers [v. United States Steel Corp.*, 536 F.2d at 1006] court suggested in dicta, then we think it is wrong. Waivers of First Amendment rights are to be inferred only in "clear and compelling" circumstances. [Citations omitted.]
At 189. Both *Koons* and *Halkin* concern the validity of pretrial orders to protect the trial process while the present post-trial situation involves the proper disposition of materials in the actual or constructive custody of the court. Hence, neither *Koons* nor *Halkin* is direct authority, and the court need not adopt one or the other decision as here dispositive.

order must be narrowly drawn and precise; and there must be no alternative means of protecting the public interest which intrudes less directly on expression. At 192.

A literal reading of Rule 26(c) suggests that a trial court's power is limited to prescribing conditions under which the district court might permit discovery in the first instance. But both the *Halkin* court, interpreting Rule 26(c), and the *Koons* court, interpreting Fed.R.Civ.P. 30(b) (predecessor of 26(c)), construe the rule to authorize orders to protect the trial process from "harmful" use of the discovery materials after the completion of the discovery process.

■ In accord with these cases, this court construes Rule 26(c) to give a district court authority to issue a protective order controlling the disposition of discovery materials after a party has acquired the materials, as well as fixing and controlling the conditions under which discovery may be obtained in the first instance.

■ Plaintiffs stress the burden to show "good cause" cast by Rule 26(c) on the movant. However, if a party seeking a protective order fails to show "good cause" essential to issuance of a protective order, "including one or more" of eight enumerated orders, the matter does not end there. The last paragraph of Rule 26(c) provides:

If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery.

Just as the first paragraph may be applied to materials already discovered, the last paragraph also is broadly construed to authorize a court to make orders that apply to materials already discovered. Since an order that the court may issue under the last paragraph of Rule 26(c) is not dependent on a showing of good cause, it may not grant any of the eight items of relief listed in the first paragraph. However, such an order may allow for use of the discovered materials "on such terms and conditions as are just."

■ The grant of any request for return of a block of discovered materials will have the effect of denying the opportunity to plaintiffs to release to the public that particular block of materials. Therefore, each return request is treated as an application for a protective order banning publication of such materials. Good cause therefore must be shown before such return is ordered. Yet, even if good cause for a complete return of any discovered materials is not shown, the denial of the motion for a full return may be accompanied by an order that would permit use of a particular block of materials "on such terms and conditions as are just."[10] However, in this matter the factors considered in determining whether there is good cause to order a return of the particular block of discovery materials are the same as the factors considered in determining whether any relief short of return should be ordered. These factors will now be identified.

*Halkin* holds that the "appropriate constitutional standard governing the issuance of restraining orders under Rule 26(c) must take account of the important public inter-

---

**10.** Other than some 83 depositions on file with the court, the discovery materials at issue are in the physical custody of the parties. While these materials thus are not and have not been part of the "official court records open to the public," they are regarded as at all times having been within the constructive custody of the court. They were obtained by the parties through discovery granted under the court's "open file" discovery policy and are deemed subject to the court's orders. The court has inherent power over its own process to "prevent abuses, oppression, and injustices." *Gumbel v. Pitkin*, 124 U.S. 131, 8 S.Ct. 379, 31

L.Ed. 374 (1888); *International Products Corporation v. Koons*, 325 F.2d 403, 407–08 (2nd Cir. 1963); *Parker v. Columbia Broadcasting System*, 320 F.2d 937, 938 (2nd Cir. 1963).

Although they are in the constructive custody of the court, these discovery materials would only be part of the "official court records open to the public" to the extent they have entered the public domain. Only the latter materials would be subject to the common-law right to inspect and copy, a general right recognized in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597–99, 98 S.Ct. 1306, 1311–12, 55 L.Ed.2d 570 (1978).

ests in the functioning of the discovery process . . . as well as the First Amendment interest in unfettered expression." At 190. While this standard makes no mention of the right of privacy, it is significant that the court recognized this factor. For it noted that in a filed response to the request for production of documents, defendants indicated:

> . . . that the produced documents had been purged of all matter which the government asserted would . . . (3) implicate the privacy interest of third parties.

At 180. Therefore, in this matter the constitutional standard must be construed to embrace the right of privacy of third parties. In addition, the federal and state public policy protecting the secrecy of grand jury proceedings must be respected and enforced.

■ Finally, the two prongs of the *Halkin* "constitutional standard" must be applied to the facts of this case. Judge Young's "open file" discovery policy, admirable as it may have been in the preparatory stage of these cases, does not permit this court to shirk its responsibility to preserve "the public interests in the functioning of the discovery process," now that the cases are winding down. The policy of "open file" discovery was not intended to serve as a vehicle to enlarge the public domain, laudable though that goal is. To permit the discovery process to serve that extraneous purpose would not encourage its acceptance or improve the "functioning of the discovery process." Thus synthesizing the discovery process, the first amendment interests, and other pertinent constitutional and public policy principles, each unit of discovery materials will be separately considered in light of these factors.

## II.

### A.

Judge Donald J. Young on May 28, 1975 granted a motion of the United States for a protective order concerning the testimony of certain defendants given to the federal grand jury that returned the indictments in

the case of *United States v. Schafer, et al.,* CR74–165 (N.D.Ohio). He entered the order after he learned that defendants had in their possession transcripts of testimony that some of the parties plaintiff in these cases had given before the same grand jury. The order granted plaintiffs "access to the Grand Jury testimony of the parties defendant named in the motion." Counsel for all parties in these cases indicate that they have complied with each of the conditions of the protective order at all stages of the litigation. The last condition of Judge Young's protective order of May 28, 1975 ordered:

> . . . that all copies of this testimony be returned to the United States Attorney at Cleveland, Ohio at the conclusion of this litigation.

The United States Attorney now requests that this order be carried out, the litigation being concluded. Plaintiffs do not oppose this request.

■ Any first amendment interest in releasing the federal grand jury testimony to the public domain is overridden by the public policy of maintaining the continuing secrecy of grand jury proceedings. To open the testimony to public view and public quotation would be likely to make people believe that the established grand jury secrecy policy has been abandoned or is a sham and a pretense. Harm to the grand jury system would result.

There is no indication of a present intent to destroy the grand jury testimony. However, before the United States Attorney or the Department of Justice proceeds to destroy such material, they are directed to give 30-day notice of intention-to-destroy to this court and to the parties or their counsel.

### B.

■ The prosecutor of Portage County requests that this court order counsel to return to the Portage County Clerk of Courts all materials obtained from the Clerk of the Common Pleas Court of Portage County, Ohio. Concerning the *subpoena duces tecum* served upon Clerk of Courts

DeLeone, Judge Young stated (in his February 20, 1975 ruling):

> The problem of the Grand Jury materials is somewhat different, because this court considers the matter of the secrecy of Grand Jury proceedings a most important one ... In this case, to begin with, the only thing sought is the documentary evidence which was laid before the Grand Jury.

However, as the wording of the *subpoena duces tecum* recorded in n. 11 indicates,[11] "documentary evidence" was not "the only thing sought." "[W]itness testimony" was also subpoenaed. While Judge Young's order does not mention this part of the subpoena, in fact, the testimony of approximately 200 witnesses was subsequently surrendered to the parties by the clerk of courts after Judge Young overruled the motion to quash service of the subpoena. Since it is not directed to the grand jury testimony, Judge Young's ruling cannot stand as authority for the proposition that secrecy imposed on "matters occurring before the Grand Jury"[12] was waived or modified with reference to the testimony of witnesses appearing before the grand jury.

Judge Young next stated:

> The Grand Jury made a report which badly damaged, if it did not destroy, the secrecy of those of its proceedings which relate to the instant case. When the reason for a rule ceases to exist, so does the rule itself.

In *Hammond v. Brown,* n.3, *supra,* this court determined:

> The Report is issued unlawfully in violation of the Grand Jury's oath of secrecy since its findings and conclusion in Parts

I through VII itemize and comment upon the evidence heard and received by the special Grand Jury. The vice of the violation of the oath of secrecy is that the special Grand Jury finds commission of criminal offenses and ascribes guilt to participants in the described incidents.

Nevertheless, the Report did not disclose the identity of the witnesses who appeared before the special grand jury. Nor was any testimony of any witness quoted in the Report. It would improperly compound the vice of the Report—expunged by this court from the records of Portage County Common Pleas Court—to conclude that the issuance of the Report destroyed the secrecy of the testimony before the special grand jury.

With reference to the identities of the approximately 300 witnesses who appeared before the special grand jury and to the transcribed testimony of approximately 200 witnesses, the state-imposed secrecy of those "matters occurring before the Grand Jury" has not been compromised or destroyed. Therefore, for the same reasons stated in part II.A. at p. 18, the continuing duty to protect the secrecy of grand jury proceedings overrides any first amendment interests in "unfettered expression" and meets the burden of good cause. The parties are ordered to return all copies of the Portage County Special Grand Jury testimony to the Clerk of Courts of the Portage County Common Pleas Court.

The documentary materials produced by the clerk of courts, comprising 15 folders, have been examined at side bar in the presence of counsel for the parties and an assistant Portage County Prosecutor.[13] Sub-

---

11. Actually, the subpoena requested:

 > ... the results of the investigation and the report of and all documents and materials related to and attached thereto by the *Portage County Ohio Grand Jury* pertaining to the events at Kent State University on, about and around May 1–5, 1970. This material to include minutes and witness testimony relating to events at Kent State University May 1–5, 1970.

12. Ohio R.Crim.P. 6(E) provides in part:

> A Grand Juror ... may disclose matters occurring before the Grand Jury, other than the deliberations of the Grand Jury or the vote of the Grand Juror, but may disclose such matters only when so directed by the court preliminary to or in connection with a judicial proceeding....

13. At a hearing on February 6, 1979, plaintiffs brought from their Columbus repository of discovery materials the documentary materials produced by the Portage County Clerk of Courts and the discovery materials obtained by

stantially all these documentary materials were found by the court to have already entered the public domain. Specific rulings allowing release of these materials were put on the record. However, names of witnesses and the scheduling of witnesses' appearances before the grand jury and certain related materials, obviously part of the grand jury's investigative process, were found to be subject to continuing grand jury secrecy. Counsel for all parties are also ordered to return the designated documentary materials to the Clerk of Courts of Portage County along with the grand jury witness testimony.

The Prosecutor of Portage County has reported that if returned, the grand jury materials will be sealed in metal cabinets and preserved by the clerk pursuant to O.R.C. § 2303.09. Should the clerk hereafter alter this announced decision, the clerk is directed to serve a thirty-day notice of intention-to-destroy any or all the materials upon this court, plaintiffs and defendants or their counsel.

### C.

Frederick C. Coleman, United States Attorney, pursuant to a subpoena served on him on February 21, 1975, produced 523 FBI "302" interview reports some of which are signed statements. These reports were obtained during the FBI investigation of the Kent State incident. Counsel for plaintiffs and counsel for defendants each have a full set of these FBI interview reports.

Before the start of the second trial on December 4, 1978, plaintiffs obtained 235 additional FBI interview reports through deposition subpoena and notices served on the Chief, Criminal Section, Civil Rights Division, United States Department of Justice. By agreement, the interview reports were forwarded in early November, 1978 to plaintiffs' counsel in Cleveland and copies were made available to defendants' counsel.

Subsequently, through FOIA requests, many of the same FBI interview reports were obtained by plaintiffs. However, the court is advised that the names of witnesses, FBI agents and third-parties in the interview reports were deleted in accordance with 5 U.S.C. § 552(b).[14]

James R. Williams, the present United States Attorney, has asked for a return to the government of all these materials. Plaintiffs vigorously oppose this request. They argue that the first amendment entitles them to unrestricted dissemination of these FBI interview reports and the other witness statements that are at issue. Plaintiffs contend that the United States Attorney, who for the first time on January 15, 1979 made his request, has the burden of showing good cause for a protective order.

■ The request of the United States Attorney for a return of the FBI materials is treated as a request for a protective order. While this court determines that the burden of showing good cause to grant either return or sealing has not been met, it is determined that an order on "terms and conditions as are just" shall be entered. Deletion of names of "third parties" (witnesses, FBI agents, and other names appearing in the interview reports) prior to dissemination of the FBI materials will avoid violation of or injury to the privacy rights of unwitting and unrepresented third parties. Thus redacted, the statements will be in precisely the same condition as the *Halkin* documents, *supra* at p. 188–89. As such, release to the public domain of the redacted statements will satisfy all appropriate first amendment interests in "unfettered expression."

■ At the oral hearing, counsel for plaintiffs asked rhetorically who would bear the expense of "reconstructing" the materials. The costs of returning the grand jury testimony and the Ohio National Guard "201's," discussed *infra*, shall be borne and

---

subpoena from the Ohio National Guard, the Ohio Highway Patrol, and the Ohio Bureau of Criminal Identification and Investigation (BCI).

**14.** 5 U.S.C. § 552(b) reads in part:

Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.

paid for by the parties who have the materials. But redaction is deemed best handled by the original custodians of the interview report or witness statements. Therefore, such government custodians are directed to bear the cost of deleting all third-party names from each witness statement or interview report.[15]

To implement this ruling, plaintiffs are directed to turn over to the United States Attorney all the FBI "302's" so that the names of all third parties may be deleted. The redacted statements and interview reports shall then be returned to plaintiffs for release to the public domain. If defendants decide to release their copies of the interview reports, they must likewise turn their copies over to the United States Attorney for redaction. If they decide to destroy their copies, an appropriate affidavit of destruction shall be filed by the Attorney General of Ohio.

### D.

■ The Ohio National Guard and Ohio Highway Patrol discovery materials have been examined by the court with counsel for plaintiffs and defendants present. Among the Ohio National Guard discovery materials are the "201's" (personnel files) of the defendant Guardsmen. Each Guardsman has a right of privacy in these records. Moreover, these are ongoing files of the Ohio National Guard. A privilege attaches to these materials that is not relaxed or modified by the production of these files under subpoena. All "201's" in the possession or custody of counsel for the parties are ordered returned to the Ohio National Guard.[16]

During the hearings on the present motions, Steven R. Keller, paralegal aide for the American Civil Liberties Union who has acted as custodian of all of the discovery materials for plaintiffs, testified that in 1975 copies of all the Ohio Highway Patrol discovery materials and copies of all the Ohio National Guard discovery materials (except the "201's") were turned over to the Kent State University (KSU) library. At the hearing of February 6, 1979, this court authorized plaintiffs to release statements of witnesses on the assumption that these particular discovery materials since 1975 have been a part of the public domain. The information obtained by this court by personal inspection of the KSU archives reveals that these materials have not been released for public viewing.[17] Because the court's assumption that these materials

---

**15.** At the February 6 hearing the court ordered plaintiffs to bear any cost of redaction. On further reflection, it is believed this would impose a burden, impermissible under the first amendment, on the release of the redacted materials into the public domain. Thus, it is concluded that the particular agency that is directed to proceed with redaction should bear the cost of redaction, and the court's earlier oral ruling is vacated.

**16.** Plaintiffs do not oppose the motion to return these materials. In any event, defendants have met the burden of establishing good cause for the return request.

**17.** This court on March 9, 1979 viewed the Ohio National Guard and Ohio Highway Patrol materials in Kent State University Library Archives. Lying on top of several folders in a single box in the locked Special Collections room is a March 7, 1975 affidavit of Les Stegh, then KSU library archivist. Les Stegh attests that he reproduced the materials (presumably in Columbus), which then became the property of the library archives. Of the four conditions

of the acceptance, the following are presently pertinent:

2. That said materials will not be made public, except through Court Order, by myself, the Kent State University Library, or any of its staff, until such time after the Kent civil cases as approved by the General Counsel of the ACLU of Ohio, Inc....

3. The purpose of this agreement is to prevent prejudicial publicity. The primary purpose of my obtaining these documents is to make them available for historical and research purposes once prejudicial publicity is no longer an issue....

It is evident that the documents were not intended to be made public at the time the documents were given to archivist Stegh, and that the conditions under which the documents could be made public have not yet come to pass. Nor have the materials been released to the public in violation of these conditions. Dean Keller, in charge of the locked Special Collections room since before March, 1975, informed the court there has been no access to these documents and no request for the documents.

have been in the public domain is incorrect, the bench rulings based on this assumption are vacated.

 While the request for return of the witness statements and interview reports is denied, redaction of names of third parties in these statements and reports is ordered to protect the privacy rights of third parties. This order is entered on the same ground and similar terms as the similar order in Part II.C. of this opinion.

This court's examination of the Ohio Highway Patrol and Ohio National Guard materials did not reveal any likelihood of an ongoing police investigation in any of the materials. Moreover, the court did not find any recording of law enforcement policies, procedures or plans. Nothing of a sensitive law enforcement nature would be compromised by disclosure of these materials.

Therefore, except for the Ohio National Guard "201's" (personnel files), which are ordered returned as indicated, and setting apart the witness statements (Ohio National Guard and Ohio Highway Patrol) for redaction by the Ohio Attorney General (upon delivery by plaintiffs), the remaining Ohio National Guard and Ohio Highway Patrol materials are released as plaintiffs request. Once redacted, the witness statements shall be returned to plaintiffs for release to the public domain.

### E.

 Plaintiffs obtained by subpoena a substantial quantity of materials (2,849 pages) from the Ohio Bureau of Criminal Identification and Investigation, including a number of witness statements. The request to return these statements to the BCI is denied; however, redaction by the Ohio Attorney General of these statements is ordered upon delivery of the statements by plaintiffs to the Attorney General or its counsel. Upon redaction, the statements shall be returned to plaintiffs for release to the public domain.

Examination of the remaining materials turned over by the BCI does not reveal any likelihood of an ongoing police investiga-

tion. Moreover, no recording of any law enforcement policies, procedures, or plans appears in any of the materials. Release of these materials would not reveal any sensitive law enforcement materials or compromise law enforcement activities. Hence, all of the BCI materials, other than the witness statements, are released from the protective order, and the witness statements after redaction may be released by plaintiffs to the public domain.

### F.

The Kent State University Police Department was subpoenaed with reference to period May 1–5, 1970 to produce its investigation report of events at the university, witness statements, all documents relating to Terry Norman, photographs, tape recordings, and all other documents relating to the period. A motion for a protective order with respect to these materials was filed on February 27, 1975, particularly challenging production of "investigation reports." The court overruled the motion on March 25, 1975.

 Counsel for the Kent State University Police Department has disclosed to the court copies of all materials turned over to the plaintiffs pursuant to the subpoena. These have been examined. The February 25, 1975 affidavit of director of safety supporting the police department's motion for a protective order declared:

> . . . the disclosure of the information . . . would not be in the public interest and would adversely affect the ability to operate an efficient and effective Police Department.

With the passage of almost nine years, the officer duty reports ("Report of Investigation"), and the "Daily Patrol, Phone and Radio Log[s]" for May 1 through May 5, 1970 have ceased to relate to any ongoing police investigation, nor would disclosure of any of these materials compromise any police procedures, tactical orders, or law enforcement policies. The Police Department has not established good cause for return of

these materials. All may be released to the public domain.[18]

Similarly, the department has not established good cause for return of affidavits filed with courts, other miscellaneous police department documents that were turned over to the plaintiffs, and witness statements and interview reports, the statements of Terry Norman and other statements relating to the Terry Norman incident. The incident has been well publicized. Except, however, for the Norman incident, all witness statements, interview reports and advice of rights acknowledgements may only be released to the public after redaction of names of witnesses, names of interviewing officers, and any third party names. While the Department shall release a certain statement entitled "To Whom It May Concern" after deletion of the name of the person making the statement, the letter of her parents transmitting the daughter's statement—asked to be treated as "confidential"—shall not be released to the public.

The police department or its counsel is directed to perform the redaction upon delivery of the materials by plaintiffs or defendants. If defendants have copies of the witness statements or interview reports, they shall be either turned over for redaction or destroyed. In all respects, the procedure prescribed in Part II.C. of this opinion shall be followed in redacting these materials.

■ Remaining for ruling are some 363 photographs and newspaper clippings. Except for a certain photograph—which appears to be a possible lineup photo—the photographs relate to public scenes or investigatory photographs of damage to property. These photographs are deemed to be in the public domain, but the "line-up" photograph shall not be released. Of course, the newspaper clippings were in the public domain when made part of the police department files.

### G.

■ The materials of each agency, federal and state, contain some statements or interview reports involving witnesses who later testified at trial. Since their testimony has entered the public domain, the statements of these witnesses or interview reports covering the same subject matter are determined likewise to have entered the public domain and need not be redacted.

### III.

■ The last block of discovery materials to be disposed of are depositions taken in the course of these cases. Local Civil Rule 6 provides: "Except as otherwise provided, depositions upon receipt shall be opened by the Clerk." During the criminal trial of certain defendants in *United States v. Schafer, et al.,* CR74–165 (N.D.Ohio E.D.), the court sealed all depositions, but thereafter on November 14, 1974 "unsealed" them. The effect of Rule 6 and Judge Young's unsealing order (construed to apply to depositions then on file and to depositions subsequently filed) is to treat the depositions as part of this court's public

---

**18.** In opposing the release of the investigative reports, counsel for the University Police Department cites *Wooster Republican Printing Co. v. City of Wooster,* 56 Ohio St.2d 126, 383 N.E.2d 124 (1978), the fourth paragraph of the syllabus of which declares: "Police and other law enforcement records are not subject to compulsory disclosure provisions of R.C. 149.-43." This Ohio Supreme Court decision dealt with a newspaper seeking disclosure of police records not already discovered in the course of a judicial proceeding. Thus, it is distinguishable from the present case in which disclosure by discovery was judicially ordered in April, 1975. But more importantly, the syllabus must be construed in light of the opinion which interprets O.R.C. § 149.43 (disclosure of public records) in conjunction with O.R.C. § 1347.08(f) (as amended, effective August 26, 1977), which reads:

> This section does not allow a person to have access to any information compiled in reasonable anticipation of a civil or criminal action or proceeding.

It is manifest that no "civil or criminal action or proceeding" based on the investigative files or logs, or photographs is anticipated. Hence, *Wooster, supra,* does not foreclose the release of either the redacted radio logs or witness statements.

judicial records and documents.[19] The common-law right to inspect and copy these records is not conditioned "upon a need for it as evidence in a lawsuit," *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), although the right of inspection and copying "is not absolute."

Deposition witnesses David A. Ambler, Chester A. Williams, Richard E. Dunn, Thomas F. Kelley, and Robert E. Matson, seek a protective order sealing these depositions from public disclosure. This request rests on the grounds of the earlier objections to the taking of the depositions made by their counsel at the deposition hearings and in their April 24, 1975 motion for leave to file a request for "restrictions on use of depositions."

■ This court previously concluded that a deposition witness does not have a property interest in his testimony that would justify an order sealing the deposition subject to the deponent's right to control the use of his testimony. Such a claimed right would further collide with the general public nature of a deposition.

However, should a deposition witness show that a particular portion of a deposition, if placed in the public domain, would be used "to gratify private spite or promote public scandal," *Nixon v. Warner Communications, Inc.*, 435 U.S. at 603, 98 S.Ct. at 1314, that portion of the deposition may be sealed. Applying this standard, this court's examination of the several depositions in question has revealed only the following items that should be sealed: the letter that is attached to the Chester Williams deposi-

tion as Exhibit 11A; and the answer of deponent Dunn at lines 18–22, p. 8 of his deposition.

■ Otherwise, there is no basis for sealing any of the remaining parts of the depositions of these movant deponents. It is not a ground for a protective order as suggested by deponents' counsel, that the depositions contain hearsay answers or answers whose relevancy or competency might be suspect. The test of the propriety of a discovery deposition question or answer is not admissibility at trial, nor is admissibility at trial the test for entry of the depositions into the public domain.[20]

■ All photos produced by deposition or trial subpoena shall be deemed part of the public domain.[21] These rulings with respect to depositions shall be understood to apply to only those depositions that have been filed with the court or copies of those depositions that are in the custody of the parties.

As to the remaining depositions, the court directs that a notice shall be sent by the Clerk of Court to each deponent at the address listed in the deposition informing the deponent that within 60 days after date of the memorandum and order, any deponent who believes that any of his testimony, if released to the public would be "used to gratify private spite or promote public scandal," should notify the court.[22] The deposition will be examined to determine if it contains any such material which will then be deleted before the deposition is permitted to be further inspected or copied by the public.

19. *Cf. In re Halkin*, n. 29, referred to *supra*, at p. 346.

20. Of course, any person who might seek to publicize deposition testimony acts without benefit of the privilege that attaches to publication of evidence received at a public trial which becomes part of the trial record.

21. For the purposes of this opinion, and not for the purposes of any issues as to the law of copyright.

22. This order shall apply to all depositions whether or not on file. Counsel for plaintiffs are directed to furnish the court with addresses

of those witnesses listed on the "Index to Depositions," whose depositions are not on file. These witnesses are:

| | |
|---|---|
| Barnett, Charles | Lobo, Richard |
| Bedall, Gordon | MacKenzie, Scott |
| Breckenridge, Dennis | Manly, Jr., Donald E. |
| Duvall, James | John Bambeck |
| Feest, William | Paul Locher |
| Flesher, Okey | Alexander Dale Stevenson |
| Grace, Tom | Snyder, James Ronald |
| Hunt, Robert | Stamps, Robert |
| Kahler, Dean Richard | Stewart, Dana |
| Krause, Arthur S. | Wrentmore, Doug |

THE FOREGOING ORDERS ARE SO ORDERED.

## ORDER OF JUDGMENT

The court having filed its memorandum and order concerning the protective orders in these cases; therefore, pursuant to Rule 58, Federal Rules of Civil Procedure,

IT IS ORDERED THAT:

(1) The court's protective order of June 24, 1976 is vacated;

(2) All counsel in these cases shall return to the United States Attorney, Cleveland, Ohio, all copies of the testimony given before the federal grand jury that returned the indictments in the case of *United States v. Shafer, et al.*, CR74–165 (N.D.Ohio);

(3) Thirty (30) days prior to the destruction of the materials listed in paragraph (2), *supra*, the United States Attorney or the Department of Justice shall serve a notice of intention-to-destroy upon this court, plaintiffs and defendants or their counsel.

(4) All counsel in these cases shall return to the Clerk of Courts of Portage County, Ohio all copies of the testimony given before the Portage County Special Grand Jury that investigated the shootings at Kent State University on May 1–4, 1970, and all copies of designated documentary materials containing names and scheduling of grand jury witnesses and related matters pertaining to the investigative process of the grand jury.

(5) Thirty (30) days prior to the destruction of the materials listed in paragraph (4), *supra*, the Clerk of Courts of Portage County, Ohio shall serve a notice of intention-to-destroy upon this court, plaintiffs and defendants or their counsel.

(6) Plaintiffs' counsel shall turn over for redaction (deletion of names of witnesses, interviewing officers, and third parties):

(a) To the United States Attorney, all copies of FBI "302" interview reports and witness statements;

(b) To the Ohio National Guard and the Ohio Highway Patrol, all copies of witness statements and witness interview reports obtained from those agencies;

(c) To the Ohio Bureau of Criminal Identification and Investigation (BCI), all copies of witness statements obtained from that agency;

(d) To the Kent State University Police Department (KSU PD), all copies of witness statements, interview reports and advice of rights acknowledgements (except those relating to the Norman incident) obtained from that agency, and all copies of a statement entitled "To Whom It May Concern."

After redaction, each individual or agency listed above shall return to plaintiffs' counsel the reports, statements and acknowledgements.

(7) Defendants shall either turn over for redaction the materials listed in paragraph (6)(a)–(d), *supra*, in which case the materials shall be returned to them after redaction, or destroy these materials and have filed by the Attorney General of Ohio appropriate affidavits of destruction.

(8) The foregoing redaction orders shall not be required with reference to statements of interview reports of, or acknowledgements by witnesses who later testified at trial.

(9) All counsel shall return to the Ohio National Guard all copies of the "201" personnel files of the defendant Guardsmen.

(10) The remaining Ohio National Guard and Ohio Highway Patrol discovery materials are unconditionally released to counsel.

(11) All the remaining BCI discovery materials are unconditionally released to counsel.

(12) All counsel shall return to the KSU PD all copies of a letter transmitting the statement entitled "To Whom It May Concern."

(13) All the remaining KSU PD discovery materials are unconditionally released to counsel.

(14) All photographs (except a "line-up" photograph, all copies of which are to be returned by all counsel to the KSU PD) and all newspaper clippings are unconditionally released to counsel.

(15) All copies of the letter attached to the Chester Williams deposition as Exhibit 11A and the answers of deponent Dunn at lines 18–22, p. 8 of his deposition shall be sealed.

(16) The Clerk of Courts, as directed by this court, shall send a notice to each deponent (including Ambler, Williams, Dunn, Kelley and Matson) informing him or her of the right to notify the court within 60 days of receiving the notice of any deposition testimony that would, if placed in the public domain, be used "to gratify private spite or promote public scandal." The memorandum and order of February 28 is amended to extend the within right of notice to Ambler, Williams, Dunn, Kelley and Matson as well as other deponents.

(17) The memorandum of February 28, 1979 shall be amended to reflect that plaintiffs have preserved objection to return of federal grand jury testimony.

(18) The memorandum of February 28, 1979 shall be amended to require defendants' counsel to provide Clerk of Courts with addresses of deponents who were defendants or former defendants.

(19) The following pleadings shall be sealed: Exhibit A, pp. 5–10 to Exhibit B, Exhibits B, C, D, E, F, G, H to Exhibit B of plaintiffs' January 12, 1979 Motion to Include Affidavits (etc.); Exhibit A to plaintiffs' February 23, 1979 Motion to Include Affidavits (etc.).

(20) All foregoing orders which expressly apply to counsel shall be understood to also apply to all parties and their agents.

(21) The execution of this order shall be stayed pending the appeal period (60 days) and any appeal by any party. If no appeal is taken, compliance with this order shall commence within thirty (30) days of the end of the appeal period. If an appeal is taken and the orders of this court are sustained, compliance shall commence within thirty (30) days of the return of the mandate unless otherwise ordered by the Court of Appeals.

IT IS SO ORDERED.